PAUL UFFMAN, LYNNE ANN UFFMAN, and MR. AND MRS. MASAMI SUGAI, Plaintiffs–Appellants, and CLARENCE L. PAUOLE, ELEANOR H. PAUOLE, and DICK PANG, Plaintiffs–Appellees, and MARGARET ROSS, and MR. AND MRS. BENNETT K. C. ING, Plaintiffs, v. HOUSING FINANCE AND DEVELOPMENT CORPORATION and KUALOA RANCH, INC., Defendants–Appellees

NO. 12591

(CIV. NO. 86–4791)

SEPTEMBER 9, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Mr. and Mrs. Masami Sugai and eight other persons filed a Complaint for Declaratory and Injunctive Relief in the Circuit Court of the First Circuit, seeking a declaration that the Kualoa Beach Lots tract is a "development tract" for purposes of the Hawaii Land Reform Act, HRS

chapter 516, and an order "directing the Hawaii Housing Authority[1] to proceed with condemnation of the leased fee interest in the lots leased by Plaintiffs[]" from Kualoa Ranch, Inc. Concluding that residential lots leased for terms of less than twenty years should be excluded in determining whether or not a "development tract" is subject to condemnation under the Land Reform Act and that the Kualoa Beach Lots therefore did not constitute a condemnable tract of land, the circuit court granted Kualoa Ranch's Motion to Dismiss or, in the Alternative, for Summary Judgment.[2] The Sugais, the only plaintiffs remaining as appellants, aver the court "erred in concluding that as a matter of law, the Kualoa Beach Lots do not constitute a 'development tract' within the meaning of Section 516–1(2) H.R.S." Finding no error, we affirm the order granting the motion.

I.

A.

The Kualoa Beach Lots are thirty–three lots strung out along the ocean side of Kamehameha Highway in Kualoa, Oahu; they are owned in fee by Kualoa Ranch, and twenty–seven of the lots are leased to others for residential purposes. Mr. and Mrs. Sugai and the eight other persons who brought the Complaint for Declaratory and Injunctive Relief are the lessees of six of the residential lots. The controversy at bar began with their applications to the Hawaii Housing Authority (HHA) seeking an acquisition by the agency of the leased fee interests in the residential lots through the exercise of the power of eminent domain for eventual purchase by the lessees.

---

[1]Act 337 of the Session Laws of Hawaii 1987 created a housing finance and development corporation within the State Department of Planning and Economic Development and transferred the functions of the Hawaii Housing Authority related to leasehold condemnation to the newly established corporation. The Housing Finance and Development Corporation (HFDC) was substituted in place of the housing authority as a defendant thereafter.

[2]HFDC joined in this motion.

From the outset, HHA doubted that it could designate all or a portion of the Kualoa Beach Lots for acquisition as requested. The doubt centered on the size of the "development tract" in which the fee interests could be designated for acquisition pursuant to HRS § 516–22. It arose because HRS § 516–1(2) (Supp. 1987) defines "development tract" as "a single contiguous area of real property not less than five acres in size which has been developed and subdivided into residential lot[s]."[3] When the leased residential lots were aggregated for the purpose of determining whether the tract met this criterion or not, the land therein, as indicated by the descriptions in recorded documents, added up to only 4.713 acres.

This setback, however, did not cause the lessees to abandon their efforts to become the owners in fee of the residential lots they leased. Aware that the shoreline boundaries of the lots were shifting boundaries affected by tides and other natural forces, they employed a surveyor to determine just where the lines were at the moment. His "survey of the shoreline affecting the leased Kualoa Beach Lots" resulted in a calculation that there were 5.002 acres in the tract that the lessees proposed be condemned by HHA.

The new information and supporting survey data were submitted to HHA, but the agency still was not convinced that the Kualoa Beach Lots were suitable for acquisition. It concluded "there are several leased lots in the . . . [s]ubdivision which do not meet the criteria for conversion under the provisions of [c]hapter 516 . . ." because they "are under 19–1/2 year leases . . . and therefore, cannot be considered in determining the minimum acreage requirements for designation of a development tract for conversion . . . ." The agency advised the lessees' attorney that it would "not pursue the proposed designation of Kualoa Beach Lots as a development tract for condemnation purposes."

### B.

The Sugais and eight other lessees filed their complaint against HHA and Kualoa Ranch in the circuit court shortly thereafter. But even before

---

[3]The definition further provides "[t]wo or more pieces of real property shall be considered as a single contiguous area if they would be contiguous except for the interposition or existence of a road, street, stream, fee lot, or other like interference."

HHA filed its responsive pleading, three of the plaintiffs were dismissed by stipulation from the suit. After HHA's answer was filed, the plaintiffs moved for summary judgment and Kualoa Ranch countered with its motion seeking dismissal of the action or a summary judgment. HFDC, which by then had been substituted in place of HHA as a defendant, joined in Kualoa Ranch's motion.

The agency, in its memorandum in opposition to the Sugais' motion for summary judgment, reiterated what the lessees were told earlier. But its stance now was also that six of the thirty–three Kualoa Beach Lots were "beach access lots that have always been owned in fee simple by Kualoa Ranch . . . and thus cannot be included in the calculation of the five acre requirement [for convertibility of a tract from leasehold to fee . ownership under the Land Reform Act]."

The circuit court heard argument, considered the memoranda and other documents submitted by the parties, and concluded:

> (1) the term "residential lots" as used in section 516–1(2), Hawaii Revised Statutes, as amended, is given the meaning which the Attorney General has determined in the Opinion of the Attorney General No. 85–16 (Aug. 9, 1985) and, accordingly, lots subject to leases with terms less than twenty (20) years are excludable in determining the scope of a development tract; and (2) as a matter of law, the Kualoa Beach Lots do not constitute a "development tract" since the Kualoa Beach Lots are not five (5) acres of property developed and subdivided into residential lots.

It therefore granted "Kualoa Ranch, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment, as joined in by Housing Finance and Development Corporation[.]" Mr. and Mrs. Sugai and two other plaintiffs appealed from the order.

## II.

The Sugais, the only appellants still pursuing the appeal from the circuit court, argue "[t]he Circuit Court's construction of the term 'residential lots' contradicts the plain meaning of the definition for the term found in § 516–1(11) H.R.S. and [lacks] support in the statutory scheme[,]" its "conclusion that lots with a lease term shorter than twenty years must be

excluded [in] calculating the area of a 'development tract' is contradicted by the language of the statute," and these readings are inconsistent with the legislative purpose for the enactment of the Land Reform Act and unjust. But we conclude the circuit court's interpretation and application of the relevant provisions are consistent with the statutory scheme and its objects.

## A.

The Hawaii Land Reform Act represents an ambitious legislative effort to remedy the problems stemming from the "disproportional concentration of land ownership" in Hawaii. *Hawaii Hous. Auth. v. Lyman*, 68 Haw. 55, 63, 704 P.2d 888, 893 (1985). Its stated purposes are "to increase the availability, alienability and turnover of single family residential lots, spread ownership of fees simple, disperse the oligopolistic market power of the large landowners, and stabilize land prices, inflation, and the state's economy by containing the cost of living and the cost of public assistance." *Id.* at 64, 704 P.2d at 893 (citations omitted).

To achieve these ends, the legislature "created a mechanism for condemning residential tracts and for transferring ownership of the condemned fees simple to existing lessees." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 233 (1984). Yet it is axiomatic that "one person's property may not be taken for the benefit of another private person without a justifying public purpose," *Thompson v. Consolidated Gas Corp.*, 300 U.S. 55, 80 (1937), and the exercise of the eminent domain power established by the Act, of course, must be fully consistent with its public purposes. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. at 241.

"Under the Act's condemnation scheme, any [eligible tenant][4] of a single family houselot of no more than two acres within a development tract of at least five acres [is entitled to request a condemnation of] the underlying fee interest." *Hawaii Hous. Auth. v. Lyman*, 68 Haw. at 64, 704 P.2d at 893. "When twenty–five eligible tenants or lessees of half of the lots in the tract file appropriate applications, the [HFDC], after public notice and hearing, may designate some or all of the lots in the tract for

---

[4] An eligible tenant is one who, among other things, owns a house on the lot, has a bona–fide intent to live on the lot or be a resident of the State, shows proof of ability to pay for a fee interest on it, and does not own residential land elsewhere nearby. HRS § 516–33 (1985).

acquisition by eminent domain . . . if it finds that the acquisition will effectuate the public purposes of the Act." *Id.* at 64–65, 704 P.2d at 894 (citation omitted). The Sugais and the other lessees of the beach lots at Kualoa, however, could not convince HFDC's predecessor that their applications were appropriate for agency action. And for good reason.

### B.

Legislation establishing the condemnation scheme was prompted in part by a finding that there was "a concentration of land ownership in the State in the hands of a few landowners who have refused to sell the fee simple titles to their lands and who have instead engaged in the practice of leasing their lands under long–term leases[.]" HRS § 516–83(a)(1) (1985). The eminent domain power granted the agency by HRS § 516–22 (1985), therefore, is tailored to be used where long–term leases have been imposed upon leaseholders in a sizable development tract.

As we noted earlier, HFDC

> may designate all or a portion of a development tract for acquisition and acquire leased fee interests in residential houselots in such development tract, through the exercise of the power of eminent domain or by purchase under the threat of eminent domain after twenty–five or more lessees or the lessees of more than fifty per cent of the residential lease lots within the development tract, whichever number is the lesser, have applied to the authority to purchase the leased fee interest in their residential leasehold lots . . . .

HRS § 516–22. Where the legislature has drawn the line separating condemnable from non–condemnable leased fee interests in residential houselots is clear when the relevant statutory provisions are read conjunctively, rather than in isolation as the appellants have, with the objects of the Act in mind.

To begin, HRS chapter 516 "applies to all lands leased as residential lots," save Hawaiian Home and federal lands, in Hawaii. HRS § 516–2 (1985). The seemingly broad coverage of the chapter, however, is circumscribed by its definition of "lease." As used in the chapter, "lease" does not mean any lease; it only means one with "a term, measured from the initial date of the conveyance, twenty years or more (including any

periods for which the lease may be extended or renewed at the option of the lessee)." HRS § 516–1(5) (1985). Thus when the term "lessee" is used in the chapter, it "means any person to whom land is leased [for twenty years or more], and the lessee's heirs, successors, legal representatives, and assigns." HRS § 516–1(8) (1985). And a "lot," "houselot," "residential lot," and "residential houselot" all "mean a parcel of land, two acres or less in size, which is used or occupied or is developed, devoted, intended, or permitted to be used or occupied as a principal place of residence for one or two families." HRS § 516–1(11) (1985).

HRS § 516–22 entitles one who has leased a houselot two acres or less in size for a term of twenty years or more to apply to purchase the fee interest therein if the houselot is part of a development tract "not less than five acres in size."[5] But as the circuit court concluded, the houselot leased by the Sugais was not part of a development tract large enough to enable HHA to act on their application. The conclusion, in our opinion, is consistent with the statutory scheme and its justifying public purposes.

The Land Reform Act was passed to alleviate the undesirable economic and social consequences of "a concentration of land ownership . . . in the hands of a few landowners who have . . . engaged in the practice of leasing their lands under long–term leases[.]" HRS § 516–83(a)(1). We do not see that an acquisition of the leased fee interests in a tract consisting of less than five acres of condemnable land would be consistent with the Act and its purposes. A development tract of sufficient size to warrant a taking must consist of at least five acres of land under lease for twenty years or more.

The order of the circuit court is affirmed.

*Thomas T. Watts* (Kemper & Watts, of counsel) for Appellants Sugai.

---

[5]HRS § 516–1(2), which defines "development tract," reads as follows:

"Development tract" means a single contiguous area of real property not less than five acres in size which has been developed and subdivided into residential lots, including residential lots which may have been converted to fee simple and streets and roadways developed as an integral part of the development tract. Two or more pieces of real property shall be considered as a single contiguous area if they would be contiguous except for the interposition or existence of a road, street, stream, fee lot, or other like interference.

*Rene E. Ojiri (Philip J. Leas* with her on the brief; Cades, Schutte, Fleming & Wright, of counsel) for Appellee Kualoa Ranch.

*Stanley Young (Renee Blondin–Nip* on the brief), Deputy Attorneys General, for Appellee Housing Finance & Development Corp.